IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**VENITA BURNS,**

**Plaintiff,**

**v.**

**AMERICAN UNITED LIFE**
**INSURANCE COMPANY,**

**Defendant.**                                                      **No. 05-CV-0466-DRH**

### MEMORANDUM AND ORDER

**HERNDON, District Judge:**

## I. Introduction and Background

Now before the Court is American United Life Insurance Company's motion to strike (Doc. 8). Specifically, American United Life Insurance Company moves the Court to strike from Burns' complaint all requests for relief pursuant to the Illinois Insurance Code and all requests pursuant to any state law theory because Burns' claims are governed by the Employee Retirement Income Security Act, **29 U.S.C. § 1002(1)**, ("ERISA"). Burns opposes the motion arguing that her claims are not preempted by ERISA as Boulevard Healthcare Management, the entity to whom the disability policies were issued, was not her employer (Doc. 17). Based on the following, the Court finds that Plaintiff's claims are preempted and grants the motion to strike.

On May 31, 2005, Venita Burns filed suit against American United

Insurance Company ("American United") in the St. Clair County, Illinois Circuit Court (Doc. 2). Burns' complaint alleges wrongful cancellation of a group short term and long term disability policy (Count I) and consumer fraud (Count II). Specifically, the complaint alleges that prior to August 24, 2003, American United issued a group short term and long term disability policy to employees of Willowcreek Rehabilitation and Nursing Center, Inc. and that Burns was an employee of Willowcreek (Doc. 2, ¶¶ 1 & 2). In Count I, Burns alleges that American United's conduct in cancelling the policy was vexatious and unreasonable and seeks damages and other remedies pursuant to Illinois Insurance Code, 215 ILCS §§ 5/155, 5/357.5, 5/357.9(a). In Count II, Burns alleges that American United's conduct of cancelling her insurance policy constituted consumer fraud.

On June 30, 2005, American United removed the case to this Court based on federal question jurisdiction, **28 U.S.C. § 1331**, and diversity jurisdiction, **28 U.S.C. § 1332** (Doc. 1). American United's notice of removal states that the Court has federal question jurisdiction over Burns' claims in that she seeks damages for conduct related to the alleged denial of group disability insurance benefits under an employee welfare benefit plan, thus her claims are preempted by ERISA. Further, the notice of removal states that the Court has diversity jurisdiction because Burns is a citizen of Illinois, American United is a citizen of Indiana and the amount in controversy exceeds $75,000.[1]

---

[1] Plaintiff did not file a motion to remand.

Thereafter, American United moved to strike portions of Burns' complaint (Doc. 8). First, American United argues that Section 143.15 of the Illinois Insurance Code is not applicable to the group disability policy at issue as that section applies only to auto insurance, fire insurance and personal line insurance policies. Second, American United argues that the remaining portions of the Illinois Insurance Code, §§ 5/155, 5/357.5 and 5/357.9(a) and the state law claims are completely preempted by ERISA. Burns counters that ERISA does not apply as Boulevard Healthcare Management was not her employer, thus, there is no preemption of the state law remedies. Burns also contends that even if ERISA does apply, it does not preempt state laws regulating insurance.

## II. Analysis

First, Defendant argues that section 143.15 is not applicable to the group disability plan at issue in Plaintiff's complaint. The Court agrees. Section **215 ILCS 5/143.15** does not apply to the group long term disability policy issued by American United. Section **143.15** states:

> Mailing of cancellation notice. All notices of cancellation of insurance as defined in subsections (a), (b) and (c) of Section 143.13 must be mailed at least 30 days prior to the effective date of cancellation to the named insured and mortgagee or lien holder, if known, at the last mailing address known to the company. All notices of cancellation shall include a specific explanation of the reason or reasons for cancellation. However, where cancellation is for nonpayment of premium, the notice of cancellation must be mailed at least 10 days before the effective date of the cancellation. For purposes of this Section, the mortgagee or lien holder, if known, may opt to accept notification electronically.

Further, section **143.11** provides:

> Cancellation provisions. All companies authorized to transact in this State the kinds of business enumerated in Section 4 of the "Illinois Insurance Code" shall include in their policies, except life, accident and health, fidelity and surety, and ocean marine policies, a cancellation provision setting out the manner in which such policies may be cancelled. However, nothing contained in Section 143.12 through Section 143.24 shall apply to contracts of reinsurance or to contracts procured by agents under the authority of Section 445.

Section **143.11** specifically states that the cancellation provisions set forth in Sections **143.12** through **143.24** are inapplicable to "accident and health" insurance policies as defined in **215 ILCS 5/4**. Section 4 defines the term "accident and health" insurance to include insurance covering disability. The policy at issue in the case is a group short term and long term disability policy. Thus, section **143.15** is not applicable. Thus, the Court strikes the reference to section **143.15** in Plaintiff's complaint.

Next, the Court finds that Plaintiff's request for relief under **215 ILCS 5/357.5** is not applicable to the group disability insurance policy at issue in this case. The express language of **215 ILCS 5/362a** states that section **357.5** is inapplicable to group policies. Section **362a** states:

> Non-application to certain policies. The provisions of sections 356a to 359a, both inclusive, shall not apply to or affect (1) any policy of workers' compensation insurance or any policy of liability insurance with or without supplementary expense coverage therein; or (2) any policy or contract of reinsurance; or (3) any group policy of insurance (unless otherwise specifically provided); or (4) life insurance, endowment or annuity contracts, or contracts supplemental thereto which contain only such provisions relating to accident and sickness insurance as (a) provide additional benefits in case of death or dismemberment or loss of sight by accident, or as (b) operate to safeguard such contracts against lapse, or to give a special surrender

> value or special benefit or an annuity in the event that the insured or annuitant shall become totally and permanently disabled, as defined by the contract or supplemental contract.

Accordingly, Section 5/357.7 does not apply to the group policy at issue, thus, the Court strikes the reference to Section 5/357.5 from Plaintiff's complaint.

Lastly, American United argues that ERISA preempts each of Plaintiff's state law claims and Plaintiff's references to the Illinois Insurance Code. Based on the following, the Court agrees with American United and finds that Plaintiff's claims based on state law and the references to the Illinois Insurance Code are preempted by ERISA.

The Court finds that the short term and long term disability plan at issue in this case is an employee benefit plan as defined under ERISA.[2] Section 1002(1)(A) of ERISA defines an "employee welfare benefit plan" as:

> [A]ny plan, fund or program ... established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... medical, surgical, hospital care, or benefits in the event of sickness, ...

**29 U.S.C. § 1002(1)(A)**.

Plaintiff's employer, Willowcreek, established, sponsored and maintained the employee welfare benefits plan in order to provide group disability insurance coverage to its eligible employees effective December 1, 2001. (Doc. 19,

---

[2] In arguing that it the group disability policy at issue is not an ERISA plan, Plaintiff argues that the policy is not covered by ERISA because Boulevard was not Plaintiff's employer and that Boulevard was not acting in interest of Willowcreek.

Exhibit A). The Plan was funded under a group disability insurance policy selected and negotiated by the employer to insure eligible employees of Boulevard Healthcare Management ("Boulevard") and Boulevard's affiliates including Willowcreek. The Subscription Agreement clearly identified Willowcreek as a participating employer. (Doc. 1, Exhibit B, p.6). Willowcreek was responsible for enrolling individuals calculating and paying premium, submitting underwriting and claim requests to American United, creating individualized billing statements for American United, making payroll deductions, and remitting premiums directly to American United. (Doc. 19, Exhibits A, C, D and E). Thus, the Court turns now to determine whether Plaintiff's claims are preempted by ERISA.

Under what is known as the well pleaded complaint rule, "a defendant may not [generally] remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law." **Aetna Health Inc. v. Davila, 542 U.S. 200, 124 S.Ct. 2488, 2494 (2004)(quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10 (1983)) (brackets and emphasis in *Aetna Health*)**. However, "[t]here is one exception ... to the well-pleaded complaint rule. '[W]hen a federal statute wholly displaces the state-law cause of action through complete pre-emption,' the state claim can be removed." **Aetna Health, 124 S.Ct. at 2495 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)); see also *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1488 (7th Cir. 1996)(discussing ERISA preemption and**

stating that "a federal court may, in some situations, look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law")(internal quotation omitted).  As explained by the Supreme Court, when a "federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.  ERISA is one of these statutes." *Aetna Health*, 124 S.Ct. at 2495 (internal quotation and citation omitted); *accord, e.g. Klassy v. Physicians Plus Ins. Co.*, 371 F.3d 952, 957 (7th Cir. 2004)(affirming removal of case from state court and stating that "ERISA provides a remedy for plan participants wrongfully denied benefits.  However, such claims must be brought under ERISA and creatively pleading a denial of benefits claim as a state law claim does not defeat the broad preemptive force of ERISA").

Furthermore, "the availability of a federal remedy is not a prerequisite for federal preemption."  *Lister v. Stark*, 890 F.2d 941, 946 (7th Cir. 1989)(affirming removal and stating, "The Supreme Court has specifically rejected such an argument.  'The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA'")(quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)); *accord, e.g.*

*Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64-65 (1987)(quoting same language in *Pilot Life* and finding removal proper under complete preemption doctrine); *Rogers v. Tyson Foods, Inc.*, 308 F.3d 785, 789 (7th Cir. 2002)("[C]omplete preemption can exist even where a particular plaintiff seeks a remedy that Congress chose not to provide when it effected complete preemption."); *Thomason v. Aetna Life Ins. Co.*, 9 F.3d 645, 646-47 (7th Cir. 1993); *Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 128 (7th Cir. 1992). Thus, ERISA may preempt Plaintiff's claims and provide a basis for federal jurisdiction despite the fact that, on its face, her complaint does not raise a federal question and regardless of whether ERISA provides an avenue on which Plaintiff can ultimately prevail on her claim.[3]

In *Vallone v. CNA Financial Corp.*, 375 F.3d 623 (7th Cir. 2004), the Seventh Circuit canvassed precedent concerning ERISA Section 502(a) and completed preemption and stated:

> [W]e note that claims by a beneficiary for wrongful denial of benefits (no matter how they are styled) have been held by the Supreme Court to 'fall [ ] directly under § 502(a)(1)(B) of ERISA, which provides an exclusive federal cause of action for resolving such disputes.' *Metrpolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62-63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Recent decisions of both this Circuit and the Supreme Court have held that state law claims, such as plaintiffs' breach of common law contract claim here, are pre-empted by ERISA. *See Aetna Health Inc. v. Davila*, [...] [— U.S. —, — - —, 124 S.Ct. 2488, 2499-2500, 159 L.Ed.2d. 312 (2004)] ("Congress' intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes

---

[3] The Court takes no position at this time regarding whether ERISA may ultimately provide a remedy for Plaintiff's claims as alleged.

> of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim.").

***Id.*, at 638-39**.

In addition, the Seventh Circuit has taught that three factors are relevant for determining whether a claim is completely preempted by ERISA: (1) whether the plaintiff is eligible to bring a claim under ERISA, 29 U.S.C. § 1132 (a/k/a "§ 502(a)"), (2) "whether the plaintiff's cause of action falls within the scope of an ERISA provision that plaintiff can enforce via § 502(a), and (3) whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law." ***Klassy*, 371 F.3d at 955(internal quotations and citation omitted)**. The Court finds that all three factors support the conclusion that Plaintiff's claims are completely preempted by ERISA.

Under **29 U.S.C. § 1002(7)**, Burns meets the definition of participant. Plaintiff is either an "employee or former employee of an employer, ..., who ... may become eligible to receive a benefit ... from any employee benefit plant." ***Miller v. Taylor Insulation Co.*, 39 F.3d 755, 758 (7th Cir. 1994)(citing 29 U.S.C. § 1002(7); *Firestone Tire & Rubber Co. v. Burch*, 489 U.S. 101, 117 (1989)(remaining citations omitted))**. The Court finds that Plaintiff is a "participant" in an ERISA plan because she has a "colorable claim to vested

benefits."[4] Plaintiff's claim is certainly "arguable." Also, Plaintiff's complaint refers to benefits (couched in terms of damages) that were owed to her under the plain terms of the short term and long term disability insurance policy. Therefore she has stated a claim for 'vested benefits' in **Firestone** terms.

Second, the basis of Plaintiff's claims is that American United wrongfully canceled her insurance policy. She claims that "as the Defendant improperly withheld the benefits of the disability insurance policy from Plaintiff, the Defendant is liable for those sums from the date of Plaintiff's disability on August 24, 2003 to the current date plus interest at a rate of 9% per annum." (Doc. 2, p. 3 ¶ 11). She also claims that "the actions of the Defendant in attempting to retroactively cancel the disability insurance policy providing coverage to the Plaintiff was vexatious and unreasonable, and the Plaintiff is entitled to an award of attorney's fees and costs plus a penalty set forth in 215 ILCS 5/155." (Doc. 2, p. 4, ¶ 13). Thus, inasmuch as Plaintiff is seeking to obtain ERISA healthcare benefits that were allegedly promised to her under the short term and long term disability policy. Plaintiff's claim is properly characterized as one under § 502 for denial of benefits and/or an enforcement of rights pursuant to the terms of the short term and long term disability policies. Plaintiff's damages that arise from Defendant's alleged wrongful cancellation of these promises are not only connected to an employee benefit plan

---

[4] It is hard to discern from the complaint whether Burns is an employer or former employee with Willowcreek. "Participant is defined as "any employee or former employee… who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer…" **29 U.S.C. § 1002(7)**.

but form the basis of an ERISA claim. Plaintiff's state law claims have a connection with or reference to an employee benefit plan – the short term and long term disability insurance policy. If Plaintiff prevailed on her state law claims, her damages would mainly consist of the healthcare benefits that she would have received under the ERISA plan.

Finally, resolution of Plaintiff's claims would necessarily implicate interpretation of the plan because, as noted above, the essence of Plaintiff's claims is that Defendant wrongfully cancelled her policy. Because Plaintiff's state law claims would necessarily require this Court to assess how much she should be paid pursuant to the healthcare benefits plan, the existence of her ERISA plan with Defendant is essential. To compute these damages, the Court would be required to refer to the insurance policy.

In addition, there is precedent in which a federal court found a putative state law claim completely preempted under ERISA and removal from state court proper. Such a finding — *i.e.*, that Section 502(a) preemption applies such that removal is proper – also comports with the more general teachings of the Seventh Circuit in this area. In ***Klassy***, the Seventh Circuit held that through Section 502(a), "ERISA provides a remedy for plan participants wrongfully denied benefits. However, such claims must be brought under ERISA and creatively pleading a denial of benefits claim as a state law claim does not defeat the broad preemptive force of ERISA." ***Id.*, 372 F.3d at 957;** *accord, e.g., Thomason***, 9 F.3d at 646(affirming removal from state court and stating that "'Federal preemption knocks out any**

**effort to use state law, including state common law, to obtain benefits'" under and ERISA plan**). Thus, the Court finds that Plaintiff's claims are preempted by ERISA and removal on the grounds of complete preemption was appropriate.[5]

However, ERISA provides that a state law is not preempted if it regulates insurance. **See 29 U.S.C. § 1144(b)(2); see also DeBruyne v. Equitable Life Assurance Soc., 920 F.2d 457, 468 (7th Cir.1990)**. Supreme Court precedent teaches that two considerations determine whether ERISA's insurance savings clause applies to a state law. First, courts determine whether a "common sense view" suggests that the law at issue regulates insurance and therefore falls within the Savings Clause. **Pilot Life, 481 U.S. at 47-48; accord, e.g., Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 341, 123 S.Ct. 1471, (2003)**. Second, courts generally consider the "business of insurance" test from the **McCarran-Ferguson Act, 15 U.S.C. § 1011 et seq. Id.** The "business of insurance" test consists of three factors: (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry. **See id. at 48-49 (citations and quotations omitted)**.

Recently, the United States Supreme Court deviated from the McCarran-Ferguson Act factors in determining when a state law regulates insurance. **See**

---

[5] Plaintiff concedes that her claims for consumer fraud and delay in payment of claims (section 5/357.9) are preempted in the event that the Court determines ERISA applies.

***Kentucky Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. at 338**.  In doing so, the Court clarified that, to be protected by the insurance savings clause, the state law must be directed specifically toward entities engaged in insurance, and the state law must substantially affect the risk pooling arrangement between the insurer and insured.  ***See id.***

Here, Plaintiff invokes §§ 357.9, 375.5 and 155 to obtain a remedy for wrongful cancellation of policy claim for benefits and consumer fraud claim for benefits under an ERISA regulated plan.  ***Pilot Life*** holds, however, that remedies under ERISA are exclusive, and not state law providing additional remedies will be saved from ERISA preemption merely because the state law regulates insurance under the first two ***Pilot Life*** criteria.  Accordingly, Burns' complaint based upon §§ 357.9, 357.9 and 155 of the Illinois state insurance code are preempted because Burns has an exclusive remedy under the statute's civil enforcement provisions.  ***See In re Life Ins. Co. of North America,* 857 F.2d 1190, 1194-95 (8th Cir. 1998)(citing cases); *Anschultz v. Connecticut General Life Ins. Co.*, 850 F.2d 1467, 1469 (11th Cir. 1988).**

With respect to Plaintiff's reference to Section 155 of the Illinois Insurance Code, although the Seventh Circuit has not addressed this issue, several district courts in the Seventh Circuit have rejected the argument that claims brought under Section 155 of the Illinois Insurance Code are protected by ERISA's insurance savings clause.  ***See, e.g., Dwyer v. UNUM Life Ins. Co. of America,* 2003 WL**

22844234, at *5 (N.D. Ill. 2003)(Manning, J.)(citing *In re O'Neil v. UNUM Life Ins. Co. of America,* 2002 WL 31356453, at *3-5 (N.D. Ill. 2002)(Andersen, J.); *Dobner v. Health Care Service Corp.,* 2002 WL 1348910, at *4 (N.D. Ill. 2002)(Guzman, J.); *Estate of Cencula v. John Alden Life Ins. Co.,* 174 F.Supp.2d 794, 799-800 (N.D. Ill. 2001)(Ashman, Magistrate J.); *Gawrysh,* 978 F.Supp. 790, 793 (N.D. Ill. 1997)(Bucklo, J.); and *Lutheran Gen. Hosp.,* 1996 WL 124449, at *4 (N.D. Ill. 1996)(Manning, J.)).

What is more, it is well-settled that ERISA's comprehensive provisions are meant to be the exclusive provisions for civil enforcement of rights under ERISA. *See Pilot Life,* 481 U.S. at 51-54; *see also* 29 U.S.C. § 1132(a). Allowing Plaintiff to assert a claim under Section 155 of the Illinois Insurance Code would almost certainly undermine ERISA's explicit enforcement procedures. *See, e.g., Cencula,* 174 F.Supp.2d at 800; *Gawrysh,* 978 F.Supp. at 794. Indeed, ERISA provides an extensive list of remedies for a party alleging the claims that Plaintiff brings here, including empowering plan participants to bring civil actions to recover benefits owed under an employee benefit plan. *See* 29 U.S.C. § 1132(a)(1)(B); *see also Pilot Life,* 481 U.S. at 53 (1987) ("The six carefully integrated civil enforcement provisions found in [Section 1132(a)]... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."). Section 155 of the Illinois Insurance Code allows for remedies specifically rejected in ERISA. *See Buehler,* 722 F.Supp. at 1564 ( "Section 155

**allows a plaintiff to recover a substantial statutory penalty much akin to punitive damages and completely at odds with ERISA's implicit prohibition on punitive damages recoveries." )**.  Accordingly, the Court concludes that Plaintiff's reference to Section 155 of the Illinois Insurance Code does not fall under ERISA's insurance savings clause.[6]

Finally, Plaintiff's reliance on *Rush Prudential HMO, Inc. v. Moran,* **536 U.S. 355, 122 S.Ct. 2151 (2002)**, is unavailing.  In *Rush Prudential HMO*, the Supreme Court decided whether the Illinois HMO Act, which requires an HMO to provide a medical service "[i]n the event that [a] reviewing physician determines the covered service to be medically necessary," was preempted by ERISA. In reaching its conclusion, the Court affirmed the Section 1132(a) preemption analysis discussed above.  536 U.S. at 373-74.  In *Rush Prudential HMO*, the issue before the Court was whether the remedies available in the Illinois HMO Act conflicted with the explicit ERISA remedies listed in Section 1132(a).  The Court concluded that the state regulatory scheme at work in the Illinois HMO Act did not provide a "new cause of action under state law and authorize[d] no new form of ultimate relief," and it did not "enlarge the claim beyond the benefits available in any action brought under § 1132(a)."  *Id.* **at 379-80**.  What the Court did not do in *Rush Prudential HMO* was overturn or modify the precedent ruling on ERISA's preemption regime described

---

[6]Even if the bad faith and vexatious delay claims constitute common law claims, rather than statutory claims under Section 155 of the Illinois Insurance Code, the Court finds that these claims are not saved from preemption. *Pilot Life,* **481 U.S. at 50**.

above. Unlike the "medically necessary" provision of the Illinois HMO Act, which the Court held was not preempted because it was consistent with the civil remedies of ERISA, as described above, Section 155 undoubtedly would expand, and thus undermine, Congress's carefully crafted civil enforcement scheme in Section 1132(a).

### III. Conclusion

Accordingly, the Court **GRANTS** American United's motion to strike (Doc. 8). The Court **STRIKES** from Burns' complaint all requests for relief pursuant to the Illinois Insurance Code and all requests for relief pursuant to state law theories.

**IT IS SO ORDERED.**

Signed this 28th day of November, 2005.

/s/          David RHerndon
**United States District Judge**